**In re SERVICE BOLT & NUT COMPANY, INC., Debtor.**

**Marvin A. SICHERMAN, Trustee, Plaintiff,**

v.

**GENERAL HIGHWAY EXPRESS, INC., Defendant.**

Bankruptcy No. B85–02403.
Adv. No. B88–0232.

United States Bankruptcy Court, N.D. Ohio, E.D.

April 24, 1989.

Marvin A. Sicherman, Dettlebach & Sicherman, Cleveland, Ohio, trustee.

Michael S. Arnovitz, Dettelbach & Sicherman, Cleveland, Ohio, for plaintiff.

David R. Ritter, Sterling Heights, Mich., for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This is a preference action wherein the parties have submitted the matter for resolution on cross-motions for summary judgment. Upon examination of the relevant pleadings, related documents, and the record generally, the following findings and conclusions are hereby made:

Herein, Marvin A. Sicherman (the Trustee), seeks recovery of a prepetition payment made by Service Bolt & Nut Company, Inc. (the Debtor) to the Defendant General Highway Express, Inc. (General). For purposes of establishing the existence of a preference, the parties have stipulated to all elements under § 547(b) of the Bankruptcy Code. (*See* Stipulations). Further, as addressed under § 547(c)(4), the parties have stipulated that new value in an amount of $1,620.91 was given following the preferential transfer which was beneficial to the Debtor thereby reducing the Trustee's recoverable claim from $5,090.85 to $3,469.94. *Id.*

■ The dispositive issue is whether certain statutory provisions of the Interstate Commerce Act (ICA) would preclude the avoidance of a preferential transfer allowed under § 547 of the Bankruptcy Code. The Trustee contends that § 547 is the controlling statute and takes precedence over provisions of Title 49 U.S.C. § 10101, *et seq.* (ICA), in determining whether General must repay the sum of $3,469.94 as an avoidable preference. General, on the other hand, argues that this preference proceeding seeking a recovery against it is in violation of 49 U.S.C. 10101, *et seq.*, specifically Sections 10741(a), 10761, 11703, 11705, 11902, 11903, 11904 of the ICA and that the Trustee's position is without merit.

To resolve this issue, an examination of the underlying purposes for both principal statutes is significant. Section 547 of the Code [11 U.S.C. § 547] addresses the subject of preference. Its two-fold purpose is to (1) discourage creditors from racing to the courthouse to dismember the debtor

during its slide into bankruptcy and (2) to promote equality of distribution by requiring any creditor which receives a greater payment than others of its class to disgorge the preference so that all creditors may equally share in the debtor's estate. H.R. 8200, H.R.Rep. No. 595, 95th Cong., 1st Sess. 188 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963; *In re Arnett,* 731 F.2d 358, 364 (6th Cir.1984); *Barash v. Public Finance Corp.,* 658 F.2d 504, 508 (7th Cir.1981).

Significant to an understanding of the statutory purpose of § 547 is the Bankruptcy Code's definition of the term "transfer." Under § 101(50), transfer "means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." 11 U.S.C. § 101(50). The underlying intent or motive for the transfer is irrelevant. It is the "effect" of the transaction, rather than the debtor's or creditor's intent that is controlling. *See* 4 *Collier on Bankruptcy,* ¶ 547.01 at 547–12, 13 (15th ed. 1988).

Next, the legislative purpose of the ICA is considered. Generally, the legislative purpose of the ICA has been fairly characterized as follows:

> The legislative history of the Interstate Commerce Act, and indeed Congress' concerns with the content of what the Interstate Commerce Act purported to achieve, show plainly that correcting the evil of discriminatory transportation practices was the principal objective of the Act. Accordingly, the Interstate Commerce Act embodied a wide-reaching and sweeping scheme to prohibit unjust discrimination in the rendition of like services under similar circumstances or reasonable advantages to those involved in the business of interstate commerce. 1 *Collier on Bankruptcy,* ¶ 5.37 at 5–158 (15th ed. 1985).

 In addition to the aforementioned stipulations, the parties have also stipulated to the Court's jurisdiction of this matter. Accordingly, this adversary proceeding arose under Title 11 United States Code and is a core matter pursuant to 28 U.S.C.

§ 157(b)(2)(F), with jurisdiction conferred under 28 U.S.C. § 1334. Upon comparison of the subject statutes' legislative histories, their objectives and underlying purposes are not competitive nor conflicting with each other. The return of a preferential transfer as required under § 547(b) is not tantamount to a rebate or to any other discriminatory act addressed under the provisions of Title 49. A rebate, within the statutory scheme of the ICA connotes a consensual act between those parties engaged in interstate commerce, whereas an avoided and returned preference constitutes an involuntary act on the part of the transferee. *See, U.S. v. Key Line Freight, Inc.,* 481 F.Supp. 91 (W.D.Mich.1977), *aff'd,* 570 F.2d 97 (6th Cir.1978). Additionally, the ICA's discriminatory acts of special rating, rebates, drawbacks, etc., require the presence of intent to effectuate such proscribed activities. Under § 547(b) of the Bankruptcy Code, intent is irrelevant. *In re Repro–Technics, Inc.,* 8 B.R. 225, 226 (Bankr.D.Me.1981). All that is required for an avoidable preference is the actual transfer being made within the preferential period, in addition to establishing the other elements of § 547(b). *See also In re Penn Dixie Steel Corp.,* 6 B.R. 817 (Bankr.S.D. N.Y.1980), *aff'd,* 10 B.R. 878 (S.D.N.Y. 1981).

In brief, the legislative intent of these statutes does not present competing interests at all. As shown above, the ICA provisions concern themselves with correcting discriminatory practices within the interstate transportation industry. To adopt the view that the ICA conflicts with and is controlling over the Bankruptcy Code would run counter to the Congressional purpose of establishing a uniform bankruptcy law. The view espoused by General was not the intent of the Congress. As well-established, the two-fold principal purpose of bankruptcy law is to provide a financially distressed debtor with a fresh start and to insure equality in distribution to the creditors of the debtor's estate. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Herein, General's position is contrary to those fundamental purposes of bankruptcy law,

and its reliance upon the cited sections of Title 49 is misplaced in its attempt to defeat a recovery under § 547.

 The Bankruptcy Court must have the power to protect its jurisdiction to assure that the fundamental policies of bankruptcy law are subserved. *See Bostwick v. U.S.,* 521 F.2d 741 (8th Cir.1975); *In re Jon Co., Inc.,* 30 B.R. 831, 10 B.C.D. 1005 (D.C. Colo.1983). Consistent with this notion is the Seventh Circuit's earlier ruling which held that "the Congress did not undertake to settle every collection problem." *Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d 56, 62 (7th Cir.1971); *See also In re Penn–Dixie Steel Corp.,* 6 B.R. 817 (Bankr.S.D.N.Y.1980). Further, where the freight charges are undisputed, and the only question concerns who is responsible for payment, no discrimination under the ICA is realized. *Id.* at 820. Here, it is uncontested that the Debtor was charged the full rate, whatever that rate was. Therefore, no discrimination respecting the rate can be found. Any deficiency experienced by General as a direct result of the operation of the bankruptcy law is not discriminatory as that term is addressed under the ICA. Like any other unsecured prepetition creditor, General is provided a remedy for any prepetition debt by filing an appropriate claim against the Debtor's estate. *In re Chateaugay Corp.,* 78 B.R. 713, 725 (Bankr.S.D.N.Y.1987).

In order to be sustained on a motion for summary judgment, the movant has the burden of proving that no genuine issue of material fact exists and, as a matter of law, he is entitled to a grant of summary judgment. *See Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. dismd.,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). At bar, that burden is upon the Trustee which must be met by a preponderance of the evidence. The Trustee has met the requisite burden of proof. Thusly, summary judgment favorable to the Trustee is appropriate, and is hereby granted.

IT IS SO ORDERED.