**In re FRIEDMAN'S EXPRESS, INC., Debtor.**

**FRIEDMAN'S EXPRESS, INC., Plaintiff,**

**v.**

**The DIAL CORPORATION, Defendant.**

**Bankruptcy No. 93–21066T.**
**Adv. No. 95–2193.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 30, 1995.

Joseph L. Steinfeld, Jr., Shawn, Mann & Neidermayer, L.L.P., Washington, DC, John T. Carroll, III, Swartz, Campbell & Detweiler, Philadelphia, PA, for plaintiff.

Lat J. Celmins, Margrave, Celmins & Verburg, P.C., Scottsdale, AZ, P. Nicholas Guarneschelli, McNees, Wallace & Nurick, Harrisburg, PA, for defendant.

### *OPINION*

THOMAS M. TWARDOWSKI,
Bankruptcy Judge.

Presently before the court are two motions filed by defendant, The Dial Corporation ("defendant"). In the first motion, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[1] defendant asserts that the complaint should be dismissed for failure to state a claim upon which relief can be granted. In the second motion, defendant requests referral of plaintiff's interstate claims to the Interstate Commerce Commission ("ICC") for determination under the doctrine of "primary jurisdiction."

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 157, 1334.

### FACTUAL BACKGROUND

The following are the relevant facts.

On April 6, 1993, plaintiff filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Code"), 11 U.S.C. §§ 101–1330, in the Bankruptcy Court for the Eastern District of Pennsylvania. Prior to this date, plaintiff operated as a motor common carrier in both interstate and intrastate commerce. Plaintiff has continued in possession of its assets and management of its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

From April of 1990 through March of 1993, defendant tendered goods to plaintiff for transportation. In July of 1993, plaintiff engaged the services of Trans–Allied Audit Company ("Trans–Allied") to conduct an audit of plaintiff's freight bills to determine whether they had been properly rated according to the tariffs on file with the ICC and various state regulatory agencies. As a result of this audit, it was determined that defendant allegedly owed plaintiff $33,677.14 in freight undercharges. Trans–Allied billed defendant for this amount and made subsequent demands for payment. Upon defendant's refusal to tender payment, plaintiff filed this complaint seeking to recover the difference between the amount defendant allegedly should have paid for the transport of freight according to the tariffs on file with the ICC and the various state regulatory agencies (the "filed rate") and the amount defendant actually paid plaintiff (the "negotiated rate").

### DISCUSSION

We first consider defendant's motion to dismiss the complaint since a decision granting this motion would eliminate the need to decide defendant's motion for referral to the ICC. We begin by noting that dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In making this determination, the court must deem all material allegations in the complaint to be true and view them in the light most favorable to the plaintiff. *Hamilton Bank v. Fidelity Elec. Co., Inc. (In re Fidelity Elec. Co., Inc.)*, 19 B.R. 531, 532 (Bankr.E.D.Pa.1982).

As stated earlier, plaintiff's complaint seeks to recover freight undercharges. Gen-

---

1. Fed.R.Civ.P. 12(b)(6) is made applicable to adversary proceedings in bankruptcy cases by Fed. R.Bankr.P. 7012.

erally, freight undercharges are recoverable under the filed rate doctrine [2] so long as the rate sought is reasonable. *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). Defendant does not dispute the validity of the filed rate doctrine in its motion to dismiss, but instead argues that plaintiff's complaint fails to state a claim under this doctrine because insufficient facts are alleged. To support this argument, defendant cites a decision rendered by the ICC in *Vertex Corp.,* 9 I.C.C.2d 688, 691 (1993), *modified,* 10 I.C.C.2d 367 (1994) and asserts that plaintiff's complaint fails to state a claim because it does not allege: "(*a*) when the shipments moved; (*b*) what commodities were involved; (*c*) the origins and destinations of the shipments; (*d*) what the original rates were; and (*e*) what the sought rates are." *Defendant's Brief in Support of Motion to Dismiss,* p. 3, *quoting Vertex,* 9 I.C.C.2d at 691. Defendant contends that without this information, it is unable to determine which tariffs apply to the various claims and that, therefore, the complaint fails to state a claim upon which relief can be granted. For the reasons that follow, we disagree and conclude that defendant's reliance upon *Vertex* is misplaced.

To explain, in *Vertex,* the ICC was not confronted with an attack on the validity of a freight undercharge complaint under Fed. R.Civ.P. 12(b)(6). In fact, no Rule 12(b)(6) motion had been filed in the *Vertex* case. Rather, *Vertex* dealt with the type and amount of evidence a carrier must present to establish a prima facie freight undercharge claim and to enable the ICC to render a decision. As stated by the ICC in *Vertex,* 10 I.C.C.2d 367, ——, 1994 WL 657865, at *5: "[w]e need certain basic information before we can determine that the tariff an under-

charge claimant relies upon applies to the shipments at issue." Certainly, at the decision making stage of the litigation, it is imperative that a plaintiff produce sufficient evidence to establish a prima facie case and to enable a court or the ICC to render a decision or face dismissal of its claim. However, in the context of a Rule 12(b)(6) motion to dismiss, the type of detail sought by defendant is not essential to the validity of the complaint and therefore, its absence does not render the complaint defective and subject to attack under Fed.R.Civ.P. 12(b)(6).

Moreover, we find that plaintiff's complaint adequately places defendant on notice as to the nature of the claim asserted therein. Accordingly, we find that the complaint complies with Fed.R.Civ.P. 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Defendant can take advantage of the federal discovery rules enumerated in Fed.R.Civ.P. 26 through 37,[3] to acquire the detail it seeks. We further note that since we are granting defendant's motion to refer this case to the ICC, much, if not all, of the detail sought by defendant will have to be provided by plaintiff when the case is presented to the ICC. *See Vertex,* 10 I.C.C.2d 367, ——, 1994 WL 657865, at *1. Accordingly, for all of these reasons, defendant's motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) shall be denied.

 We next address defendant's motion for referral of the interstate freight undercharge claims to the ICC. In this motion, defendant asserts that it is within the primary jurisdiction of the ICC to review the claims and defenses presented by the parties. The doctrine of primary jurisdiction[4] requires a court to suspend a proceeding pend-

---

**2.** The history of the filed rate doctrine and its impact upon a carrier's ability to collect freight undercharges was explained in detail by us in *Friedman's Express, Inc. v. SKF USA, Inc.* (*In re Friedman's Express, Inc.*), 180 B.R. 788 (Bankr. E.D.Pa.1995), a case cited by both parties in their briefs, and need not be further explained in this Opinion.

**3.** Fed.R.Civ.P. 26 through 37 are made applicable to adversary proceedings in bankruptcy cases by Fed.R.Bankr.P. 7026 through 7037.

**4.** The primary jurisdiction doctrine applies when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pacific R.R.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

ing before it so that the matter might be referred to an appropriate administrative body. *F.P. Corp. v. Ken Way Transp., Inc.*, 821 F.Supp. 1032, 1036 (E.D.Pa.1993).

The ICC is the regulatory agency charged by Congress with expert skill and knowledge of the interstate transportation industry. *F.P. Corp. v. Ken Way Transp., Inc.*, 848 F.Supp. 1181, 1185 (E.D.Pa.1994). In *Reiter v. Cooper*, —— U.S. ——, ——, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993), the United States Supreme Court addressed the issue of rate reasonableness and found it to be within the primary jurisdiction of the ICC.

▉ In the case before us, both plaintiff and defendant agree that the rate reasonableness issue is within the primary jurisdiction of the ICC and cite a recent decision of this court in which referral to the ICC [5] was granted. *See SKF*, 180 B.R. at 788. However, as we noted in *SKF*, referral to the ICC on rate reasonableness is not automatic. Rather, to justify referral of the rate reasonableness issue to the ICC, the shipper must make a threshold showing that the filed rates sought to be collected by the carrier are unreasonable. *Id.* at 795. In this case, defendant met this burden by alleging that plaintiff is attempting to collect rates, which, if on file with the ICC at the time of the shipments in question, were unreasonably high when compared to rates being charged by other carriers at the time in question.[6]

Accordingly, as we find that defendant made a sufficient threshold showing of rate unreasonableness to justify referral of this issue to the ICC, we shall stay the proceedings in this case to give defendant an opportunity to file an administrative complaint with the ICC requesting a determination of the rate reasonableness issue and any other contested issues which lie within the primary jurisdiction of the ICC.[7]

An appropriate order follows.

### *ORDER*

**AND NOW,** this 30th day of August, 1995, it is **ORDERED** that defendant's motion to dismiss this adversary complaint pursuant to Fed.R.Civ.P. 12(b)(6) is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion requesting that the proceedings in this adversary case be stayed so that defendant may present various issues raised in the pleadings to the ICC is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant shall, on or before **September 25, 1995,** file an administrative complaint with the ICC requesting a determination of the issues which are within the primary jurisdiction of the ICC.

**IT IS FURTHER ORDERED** that the proceedings in this adversary case are placed in a state of civil suspense until a decision is issued by the ICC or until further Order of this court.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report, which describes in detail the status of the ICC proceedings, with this court by **March 29, 1996 and every sixty days thereafter,** until the ICC proceeding is concluded.

**IT IS FURTHER ORDERED** that when the ICC proceeding is concluded, **the parties shall promptly file a certified copy of the ICC decision with this court and request**

---

**5.** The term referral is a misnomer. As noted by the United States Supreme Court in *Reiter v. Cooper*, —— U.S. at ——, 113 S.Ct. at 1220, the Interstate Commerce Act does not contain a direct mechanism for a court to demand or request a determination by the ICC. Rather, a court can only stay the proceedings in the case before it and advise the party requesting referral to file the appropriate administrative complaint with the ICC.

**6.** Attached to defendant's motion to dismiss and motion for referral to the ICC is an affidavit of defendant's Transportation Resource Manager, Peter Opsomer, which supports this allegation.

**7.** In its brief, plaintiff makes an informal request that we modify our referral order should the United States Third Circuit Court of Appeals rule in *Hargrave v. United Wire*, Docket No. 94–5131 that the defenses enumerated in the Negotiated Rates Act are inapplicable to bankruptcy cases. As the Third Circuit has not yet issued a decision in *Hargrave*, defendant's informal request is premature and will not be ruled upon at this time. If a decision of the United States Third Circuit Court of Appeals is rendered in the future which becomes relevant to this case, plaintiff can file the appropriate motion at that time.

that the proceedings in this adversary case recommence.